IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ERIC T. HALL,

                                                           OPINION AND ORDER

                Plaintiff,

                                                      12-cv-788-bbc

     v.

RICHARD GEARHART,
LISA DITLEFSEN, MARK OTT,
FRANK TOMLANOVICH,
CHARISSE ROZGA-ANDERSON,
ANTHONY JUSTICE, and
MARK VANDERBLOOMEN,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this lawsuit, plaintiff Eric Hall, a prisoner at the Oshkosh Correctional Institution, is proceeding on various claims against several defendants regarding his allegedly false arrest for the theft of two trucks. Nine defendants have already been dismissed from this case in previous summary judgment orders. Dkt. ##75, 125. Now before the court are three summary judgment motions filed by the remaking defendants: one filed by defendant Mark Ott; one filed jointly by defendants Anthony Justice and Mark VanderBloomen; and another filed jointly by defendants Richard Gearhart, Lisa Ditlefsen, Frank Tomlanovich and Charisse Rozga-Anderson.

At this point, the following claims remain pending:

1. State law malicious prosecution claims against defendants Ott, Justice,

1

VanderBloomen, Gearhart, Ditlefsen, Tomlanovich and Rozga-Anderson for conspiring to have unsupported criminal charges brought against plaintiff;

2. Fourth Amendment claims against defendants Justice, Vanderbloomen, Gearhart, Tomlanovich and Rozga-Anderson for falsely arresting plaintiff on March 11, 2011, despite knowing that the DNA evidence implicating him was planted;

3. Fourth Amendment claims against defendants Justice, Vanderbloomen, Gearhart, Tomlanovich and Rozga-Anderson for falsely imprisoning plaintiff between his March 11, 2011 arrest and his revocation proceeding;

4. Fourth Amendment claims against defendants Justice, Vanderbloomen, Gearhart, Tomlanovich and Rozga-Anderson for illegally searching plaintiff's house and vehicle and taking a DNA sample; and

5. A Fourth Amendment claim against defendant Gearhart for illegally obtaining and executing a search warrant for plaintiff's telephone records.

Defendants briefed their summary judgment motions and proposed findings of fact to which plaintiff did not respond. Therefore, I must treat the proposed findings of fact as undisputed. Wienco, Inc. v. Katahn Associates, Inc., 965 F.2d 565, 568 (7th Cir. 1992); Procedure to Be Followed on Motions for Summary Judgment, at II.C ("Unless the responding party puts into dispute a fact proposed by the moving party, the court will conclude that the fact is undisputed.").

From defendants' proposed findings of fact and the record, I find the following facts to be undisputed. (For the sake of simplicity I will combine the proposed findings of fact from all three summary judgment motions.)

## UNDISPUTED FACTS

Plaintiff Eric Hall is an inmate at the Oshkosh Correctional Institution. This is not

his first incarceration. He was incarcerated earlier on a number of felony convictions. In May 2010, he was released from that earlier term to extended supervision related to a conviction for burglary, in violation of Wis. Stat. § 943.10(1m)(a), and on parole related to a count of criminal damage to property, in violation of Wis. Stat. § 943.01(1). (Defendants do not supply the exact date of plaintiff's release, but plaintiff has not suggested it was after May 10, 2010.)

On May 14, 2010, a Clark County law enforcement officials recovered a gray 2004 Ford truck that had been stolen two days earlier in the city of Osseo, Wisconsin, in Trempeleau County. DNA swabs of the truck's interior were taken and sent to the state crime lab, which reported on July 27, 2010 that the DNA sample taken from the steering wheel matched plaintiff's profile in the Wisconsin "Casework and Convicted Offender Indices." Plaintiff was arrested, given a revocation hearing and held in jail until November 10, 2010.

Two days later, on November 12, 2010, a blue Ford truck was stolen in Neillsville, Wisconsin. Defendant Mark Ott, a Neillsville police officer, was assigned to the investigation of the theft. On November 14, 2010, the La Crescent, Minnesota Police Department received several complaints of stolen license plates. On November 19, 2010, four businesses were burglarized in Luck, Wisconsin, in Polk County, Wisconsin. Surveillance videos from one of the businesses showed a man wearing a hooded sweatshirt and gloves, and a truck with lighted tow mirrors, a dented tailgate and a center grill area with two bright lights. On December 22, 2010, defendant Richard Gearhart, a Polk County Sheriff's Department

investigator, learned that an abandoned blue Ford truck that matched the stolen vehicle's 4identification number had been located in the county. The next day, defendant Gearhart spoke with defendant Ott about the vehicle.

Defendant Gearhart learned that the license plates on the stolen truck matched two of the license plates reported stolen in La Crescent. He examined the blue Ford truck and watched the surveillance videos, observing that the stolen truck had lights mounted in the same places as the truck in the video. Gearhart had the vehicle transported to the Polk County Sheriff's Department and later searched it with the help of Lisa Ditlefsen, a Polk County investigator. Inside they found four pairs of brown cotton gloves, a pry bar, a vice grip tool, a splitting maul, bolt cutters, hose ends and maps of Minnesota and Wisconsin. The truck's owner confirmed that these items had not been present in the truck at the time of the theft. Defendants Gearhart and Ditlefsen sent the items to the state crime lab, along with DNA swabs from the steering wheel, ignition and door handles.

On March 9, 2011, defendant Ditlefsen received a report from the state crime lab and provided it to defendant Gearhart. According to the report, the DNA found on evidence from the stolen truck did not match DNA taken from the truck's owner. Instead, "a search of this evidentiary profile against the Casework and Convicted Offender Indices revealed a match between the evidentiary profile and the profile of a convicted offender in the Wisconsin DNA Databank." The report identified plaintiff as the matching offender and stated that the "match should be considered an investigative lead. In order to confirm that DNA may have come from [plaintiff], it will be necessary to submit a standard DNA sample

from him."

Upon receipt of this report, defendant Gearhart ran a criminal history and discovered that plaintiff had prior felonies, including convictions for operating a motor vehicle without the owner's consent and burglary. Gearhart advised plaintiff's probation agent that the state crime lab matched plaintiff to DNA found in a stolen vehicle tied to four burglaries in Luck, Wisconsin. The agent told Gearhart that plaintiff was reportedly residing with his girlfriend, Jackie Paznowski, in the City of Eagle River.

On March 9, 2011, the agent talked to defendant Charisse Rozga-Anderson, a Vilas County Sheriff's Department detective, who spoke to Paznowski, who confirmed that plaintiff was staying with her. Rozga-Anderson obtained a detailed description of Paznowski's apartment for defendant Gearhart's search warrant application. On March 10, 2011, defendant Gearhart obtained a search warrant for boots and a sweatshirt believed to have been worn by the suspect in the Luck burglaries. Plaintiff's probation agent then issued the Vilas County jail an "Order to Detain" plaintiff.

On March 11, 2011, defendants Gearhart and Rozga-Anderson met with defendants Anthony Justice, an Eagle River police officer, and Mark VanderBloomen, the Eagle River chief of police, before they each traveled separately to Paznowski's apartment. Justice arrested plaintiff pursuant to the "Order to Detain" and transported him to the Vilas County jail. Rozga-Anderson searched the apartment but did not find the boots or sweatshirt. VanderBloomen remained on the scene as backup.

In an interview with defendant Gearhart, Paznowski reported that, though plaintiff

was released on November 10, 2010, he had not arrived at her home until four or five days later. She stated that plaintiff typically stayed with her for three or four days each week, and then left for three or four days at a time to tend to his internet business. She told Gearhart that plaintiff drove a blue Ford Explorer; Gearhart found a blue Explorer in Paznowski's parking lot. He looked through the windows and saw tools and articles of clothing.

Defendant Gearhart then asked the Polk County district attorney for a warrant expansion to include plaintiff's Ford Explorer, to obtain plaintiff's DNA and search for the sweatshirt and boots thought to have been worn by the perpetrator of the Luck burglaries. Armed with the search warrant, defendant Gearhart searched the vehicle, locating boots, four pairs of gloves similar to those found in the Neillsville truck, two ski masks, a pry bar, a crowbar, a splitting maul and a flashlight. He then went to the Vilas County jail and obtained a DNA swab from plaintiff, which he sent to the state crime lab.

Defendant Gearhart applied for a search warrant for plaintiff's cellular phone records. In support, he testified about the investigation leading to plaintiff's arrest and the truck used for the Luck burglaries. The warrant issued on March 14, 2010. On March 16, 2011, plaintiff was transferred to the Eau Claire County jail.

Relying on the Polk County investigation and state crime lab results, parole agent Kristi Gruebele recommended revocation of plaintiff's probation. The state held a revocation hearing on May 9, 2011, alleging that plaintiff took a vehicle on November 12, 2010 without the owner's consent and that he was involved in Polk County burglaries on November 18 and 19 of 2010. In support, the state provided evidence of plaintiff's similar prior criminal

convictions and his periods of confinement, which showed that plaintiff was released just two days before the Neillsville truck theft. Plaintiff denied these allegations. The state alleged in addition that plaintiff had failed to pay his monthly supervision fees and failed to make his monthly payments toward his court-ordered financial obligations. Plaintiff admitted these violations. The state's exhibits included prior criminal convictions and the dates of plaintiff's previous incarceration. In a decision dated May 23, 2011, an administrative law judge revoked plaintiff's probation and ordered him reconfined for 42 months and three days.

On November 29, 2011, plaintiff was charged with four counts each of felony burglary and misdemeanor theft and one count of felony operating a motor vehicle without owner's consent. Judge Molly Gale Wyrick dismissed these charges without prejudice for failure to meet plaintiff's demand for a speedy trial.

Defendant Frank Tomlanovich was the Vilas County sheriff. He did not personally participate in any investigation of plaintiff. He did not visit Paznowski's home, conduct any searches or arrest or detain plaintiff.

None of the defendants have received notices of inquiry or notices of claim under Wisconsin law. Appropriate representatives from the City of Neillsville, Vilas County and Polk County never received a notice of injury or notice of claim directed to the respective counties or their officers, agents or employees.

## OPINION

The remaining defendants have moved for summary judgment on plaintiff's claims of

malicious prosecution under state law and illegal search, false arrest and false imprisonment under the Fourth Amendment. To succeed on such a motion, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Indiana Grocery, Inc. v. Super Valu Stores, Inc., 864 F.2d 1409, 1412 (7th Cir. 1989).

### A. Defendant Tomlanovich

Plaintiff has not disputed the proposed facts showing that defendant Tomlanovich had no involvement in any search, whether of plaintiff's home, his Ford Explorer or his telephone records, or in his arrest or imprisonment. An individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation. Rasche v. Village of Beecher, 336 F.3d 588 (7th Cir. 2003); Alejo v. Heller, 328 F.3d 930 (7th Cir. 2003); Palmer v. Marion County, 327 F.3d 588 (7th Cir. 2003). Further, a supervisor cannot be held liable for the acts of his or her subordinates absent some personal involvement in the wrongdoing. Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988) ("Supervisors must know about conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate reckless indifference."). In the absence of any evidence indicating that Tomlanovich was involved in the acts plaintiff is challenging, summary judgment will be granted on all claims against this defendant.

8

B. <u>State Law Malicious Prosecution—Notice of Claim</u>

In an order entered on January 14, 2014, I dismissed plaintiff's state law malicious prosecution claim against then-defendant Brian Lee because of plaintiff's failure to comply with Wisconsin's notice of claim statute regarding local government employees, Wis. Stat. § 893.80(1d)(a), which provides that a plaintiff may not bring a lawsuit against a local government employee without first providing that employee notice of circumstances of the claim within 120 days of the events at issue   In a September 18, 2013 order, I dismissed plaintiff's state law malicious prosecution claims against then-defendants Michael Felton, Kristi Gruebele, Denise Jones, Jennifer Naugle and Marie Beth Varriales because plaintiff failed to comply with Wisconsin's notice of claim statute regarding state employees, Wis. Stat. § 893.82, which requires the plaintiff to give the "person who performs the duties of a clerk or secretary" for the governmental body an itemized statement of the relief sought and allow that entity an opportunity to disallow the claim.

Defendants Mark Ott, Anthony Justice, Mark VanderBloomen, Richard Gearhart, Lisa Ditlefsen and Charisse Rozga-Anderson contend that plaintiff's state law malicious prosecution claims against them should be dismissed for plaintiff's failure to comply with Wis. Stat. § 893.80. Each defendant is a local government employee. Neither defendants nor their respective government agencies received a notice of claim or notice of injury from plaintiff naming these defendants. The 120-day deadline for filing notices of claim based on events in 2010 and 2011 expired long ago. Defendants' motions for summary judgment will be granted as to plaintiff's state law malicious prosecution claims. Because defendant Mark

Ott was sued only for the state law claim of malicious prosecution, he will be dismissed from this case.

C. Fourth Amendment Claims

1. Effect of Heck v. Humphrey

Defendants argue that plaintiff's Fourth Amendment claims for illegal search, false arrest and false imprisonment are barred by Heck v. Humphrey, 512 U.S. 477 (1984). Under Heck, a "district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Copus v. City of Edgerton, 151 F.3d 646, 648 (7th Cir. 1998) (quoting Heck, 512 U.S. 477, 487).

The Heck doctrine applies not just to convictions, but also to disciplinary actions such as plaintiff's parole revocation. To prove prior invalidation, plaintiff must specifically demonstrate that his revocation "has been reversed on appeal, expunged by executive action such as a pardon, declared invalid by a state tribunal or called into question by a federal court's issuance of a writ of habeas corpus." Dkt. #156 at *7 (citing Heck, 512 U.S. 477, 487). Because plaintiff's revocation was never overturned, defendants maintain that his § 1983 claims are barred until he has exhausted his administrative remedies in state court and successfully challenged the legality of his confinement in a petition for habeas corpus.

The issue is more complex than defendants acknowledge. The Court of Appeals for

the Seventh Circuit has explained that in a suit for damages, "Fourth Amendment claims for unlawful searches or arrests do not necessarily imply a conviction is invalid, so in all cases these claims can go forward." Copus, 151 F.3d at 648-49 (emphasizing that "'a search can be unlawful but the conviction entirely proper or the reverse, and . . . some injury from a violation of the [F]ourth [A]mendment is unrelated to conviction'") (quoting Gonzalez v. Entress, 133 F.3d 551, 553 (7th Cir. 1998)). Unless the court can say with certainty that success on a § 1983 claim would necessarily impugn the validity of the plaintiff's conviction, Heck does not apply. In this case, the evidence does not suggest that plaintiff's conviction would be impugned by plaintiff's success on his Fourth Amendment claims, so his case may go forward.

2. False arrest and imprisonment

Plaintiff contends that defendants Gearhart, Rozga-Anderson, Justice and VanderBloomen conspired to plant DNA evidence on items recovered from the Neillsville truck and provided false information to plaintiff's parole agent, with the result that plaintiff was in custody on a probation hold related to the theft of the second truck. He maintains that these events resulted in his "false arrest" and "false imprisonment" in violation of the Fourth Amendment. False arrest and false imprisonment violate the Fourth Amendment guarantee against unreasonable seizure, Knox v. Smith, 342 F.3d 651, 657 (7th Cir. 2003) (noting that wrongful detention by state official is Fourth Amendment violation actionable under 42 U.S.C. § 1983).

Generally, a false arrest or false imprisonment occurs when a person is detained without probable cause. Gerstein v. Pugh, 420 U.S. 103, 111-13. A different standard applies to persons on parole or probation; they are not entitled to the full protections of the Fourth Amendment accorded to free citizens. Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) (probationers do not enjoy "'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'") (citing Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). The search or seizure of a parolee or probationer need not be supported by probable cause to pass constitutional muster. Rather it may be based on "reasonable suspicion" that the person violated the terms of his supervision, parole or probation. United States v. Knights, 534 U.S. 112, 121 (2001); Knox v. Smith, 342 F.3d 651, 657 (7th Cir. 2003) ("Therefore, we must determine whether the facts, taken in the light most favorable to Knox, show that Smith requested the warrant without reasonable suspicion to believe that Knox had violated his [mandatory supervised release].")

The undisputed facts show that defendants meet this standard easily. Defendant Gearhart and the other moving defendants (with whom Gearhart maintained contact) have demonstrated that they did not falsify evidence against plaintiff, but instead had a reasonable basis for their belief that plaintiff had violated the terms of his extended supervision. United States v. Sawyer, 224 F.3d 675, 680 (7th Cir. 2000) ("When law enforcement officers are in communication regarding a suspect, the knowledge of one officer can be imputed to the other officers under the collective knowledge doctrine."). Gearhart relied on the laboratory

12

findings in determining that plaintiff was a possible source of the DNA found on items recovered from the Neillsville truck. Upon receipt of that report, Gearhart ran plaintiff's criminal history and discovered that plaintiff had prior felonies, including convictions for operating motor vehicle without owner's consent and burglary. Defendants knew the Neillsville truck was fitted with license plates stolen from La Crescent, Minnesota and they knew that the Neillsville truck theft, La Crescent license plate theft and Luck burglaries had all occurred within nine days of plaintiff's release from incarceration. The lab report, plaintiff's prior record, the stolen license plates on the Neillsville truck and the robberies were more than enough to show that defendants provided plaintiff's parole agent reasonable grounds to issue an "Order to Detain." The motion of defendants Gearhart, Rozga-Anderson, Justice and VanderBloomen for summary judgment will be granted with respect to plaintiff's false arrest and imprisonment claims.

4. Illegal searches

Plaintiff contends that defendants Gearhart, Rozga-Anderson, Justice and VanderBloomen violated his Fourth Amendment rights by knowingly producing false and fabricated evidence to obtain search warrants. He challenges the following searches:

- The Mach 11, 2011 search of Paznowski's apartment for the sweatshirt and boots worn by the perpetrator of the Luck burglaries.

- The March 11, 2011 search of plaintiff's Ford Explorer for the same items.

- The March 14, 2011 search of plaintiff's cellular telephone records for the date of the Luck burglaries.

13

An officer requesting a search warrant violates the Fourth Amendment if he "knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." Knox, 342 F.3d at 658. A plaintiff can show reckless disregard for the truth by demonstrating that the requesting officer "entertained serious doubts as the [statements'] truth," had "obvious reasons to doubt their accuracy" or misrepresented or omitted facts he "knew would negate probable cause." Beauchamp v. City of Noblesville, Ind., 320 F.3d 733, 743 (7th Cir. 2003). Plaintiff has produced no evidence supporting the allegations in his complaint that defendants planted falsified evidence to obtain search warrants, whereas defendants have shown that they followed proper procedures.

Defendant Gearhart applied for the search warrant for Paznowski's apartment only after receiving plaintiff's DNA information from the state crime lab, reviewing plaintiff's criminal history and observing surveillance video and photographs from the Luck burglaries. He did not apply for the extended search warrant until he observed clothing and tools through the window of plaintiff's Ford Explorer and he did not apply for a warrant to search plaintiff's telephone records until he learned that plaintiff had owned a cell phone during the time of the Luck burglaries. Defendants Justice and VanderBloomen had no involvement in obtaining the disputed warrants or any reason to doubt their validity.

Without any evidence to suggest that Gearhart acted improperly in obtaining warrants, that Justice or VanderBloomen had reason to doubt the legality of the resulting warrants or that anyone planted plaintiff's DNA, plaintiff cannot succeed on his claim that defendants'

actions in obtaining or executing the search warrants violated the Fourth Amendment. Accordingly, defendants Gearhart, Rozga-Anderson, Justice and VanderBloomen will granted summary judgment on these claims.

ORDER

IT IS ORDERED that

1. The motions for summary judgment filed by defendants Mark Ott, dkt. #128, Richard Gearhart, Lisa Ditlefsen, Frank Tomlanovich and Charisse Rozga-Anderson, dkt. #140, and Anthony Justice and Mark VanderBloomen, dkt. #151, are GRANTED.

2. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 14th day of May, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge